1
2
3
4
5                   UNITED STATES DISTRICT COURT
6                  EASTERN DISTRICT OF WASHINGTON
7   MICHAEL D. LOJAS and DIANE        )
    LYNN LOJAS, Husband and Wife,     )      NO.    CV-07-0140-JLQ
8   and the marital community comprised )
    thereof,                          )
9                                     )    **ORDER GRANTING DEFENDANTS'**
                   Plaintiffs,        )    **MOTION FOR SUMMARY**
10                                    )    **JUDGMENT; DENYING PLAINTIFFS'**
                                      )    **CROSS-MOTION FOR SUMMARY**
11      v.                            )    **JUDGMENT**
                                      )
12                                    )
                                      )
13  STATE OF WASHINGTON,              )
    DEPARTMENT OF FISH AND            )
14  WILDLIFE ENFORCEMENT, a State     )
    Agency, and TERRY L. RAY-         )
15  SMITH, as Agent and individually, )
                                      )
16                 Defendants.        )

17        **BEFORE THE COURT** are Defendants Motion for Summary Judgment (Ct. Rec. 12)

18  and Plaintiffs' Motion for Summary Judgment (Ct. Rec. 19). This matter was heard on April

19  10, 2008. Jarold Cartwright participated on behalf of the Defendants and Douglas Phelps

20  represented Plaintiffs. Having considered the written submissions and oral arguments of the

21  parties, Defendants' Motion for Summary Judgment is Granted and the Plaintiffs' Motion

22  Denied.

23  **I.     PLAINTIFFS' PLEADINGS VIOLATE LOCAL RULE 56.1**

24        Even though Plaintiffs' pleadings in support of their Motion for Summary Judgment

25  *and* in response to Defendants' Motion do not comply with Local Rule 56.1(a), (b), and (e)

26

ORDER - 1

requiring a separate statement of facts, set forth in serial fashion (not in narrative form), with references to specific portions of the record, such omission does not adversely affect Plaintiffs' position, since the issues before the court are ones of law, not fact. The court assumes  Defendants' facts are admitted to exist without controversy.  L.R. 56.1(d).

## II.    UNDISPUTED FACTS

On May 11, 2005, U.S. Drug Enforcement Administration (DEA) agents and Stevens County Sheriff's Department detective and deputies entered the Plaintiff Michael and Diane Lojas's property in Addy, Washington located in Stevens County,  and executed two search warrants.  One had been issued by U.S. Magistrate Judge Cynthia Imbrogno.  The other was issued by Spokane County District Judge Patti Walker, who was at that time a county district court judge, though she signed the warrant as "Judge, State of Washington, Superior Court." Ct Rec. 17, Ex. 3 at 14.   A district court in the state of Washington is a court of limited jurisdiction, but with authority to issue search warrants. The warrant itself was issued for the Superior Court of Stevens County.

Both search warrants specified the areas of the property that were subject to search including the residence and several detached outbuildings.  The federal search warrant contained a list of 11 types of items to be seized as "[e]vidence of past and present criminal activity involving the conspiracy to manufacture and distribute controlled substances..." The state warrant included the same types of items as items "that have been purchased with money acquired from the illegal distribution of narcotics." Several items were seized from the property including marijuana plants, processed marijuana, grow lights, growing equipment, tax records, bank statements, power bills, a boat and trailer, vehicles, cash, several firearms and ammunition.

During the search, the officers executing the search warrants noticed wildlife items which they believed may have been evidence of wildlife violations.  The officers had Washington State Patrol contact Fish and Wildlife Officer Terry Ray-Smith of the

1  Washington Department of Fish and Wildlife (WDFW), who was off duty at the time, and
2  requested that she go to the Lojas property to investigate.  Before traveling to the Lojas
3  property, Ms. Ray-Smith contacted Stevens County Deputy Prosecutor Lew Schrawyer to
4  find out if she needed a warrant before entering Plaintiffs' property.  Mr. Schwrayer advised
5  Ray-Smith that it was proper for her to enter the property at the request of the other officers
6  and her work would be covered by the other officers' search warrants.

7      Ray-Smith traveled to the Lojas residence where Stevens County Sheriff Detective
8  Dave Baskins met her and walked her through the residence and outbuildings to show her the
9  wildlife evidence the officers had encountered in the areas they had been searching.  Ray-
10  Smith documented what she saw in a narrative report.   It was noted the residence contained
11  walls mounted with exotic animals and wildlife head mounts, tanned animal skins, full animal
12  and bird mounts, piles of labeled deer antlers, plastic garbage sacks of tanned wildlife capes,
13  and more taxidermy animal model mounts. Apparently, Mr. Lojas had been previously
14  licensed to do business as a taxidermist. Ray-Smith walked through the residence and
15  outbuilding, taking pictures.  Ray-Smith seized thirteen items including a taxidermist log
16  book, several sets of antlers, a cougar skull, a moose skull, and four decaying antlered deer
17  skulls.  Of the thirteen items seized, only the log book and four decaying deer heads without
18  identification or tags, which were found in plain sight in a barn on the property, were owned
19  by Mr. Lojas. Ray-Smith did not detain or arrest Mr. Lojas or issue him a citation, but she had
20  him sign a "Property/Evidence Report form listing the items [she] was seizing for
21  investigation."  Ct. Rec. 17, Ex. 7 (Narration) at 32. All property seized by Ray-Smith was
22  returned to Mr. Lojas on July 30th, 2005, except for the four deer heads which according to
23  the record were returned on February 21, 2007. Ct. Rec. 17, Ex. 4 at 23.

24      On August 10, 2005 the Stevens County Prosecutor filed a complaint against Mr. Lojas
25  alleging one count of Second Degree Unlawful Transportation of Fish or Wildlife, a
26

ORDER - 3

1  misdemeanor.  On October 13, 2005, the prosecutor moved to dismiss the charges and the
2  motion was granted.

3  On May 3, 2007, Plaintiffs filed a Complaint against the Defendants alleging. *inter* alia,
4  claims under 42 U.S.C. § 1983 for purported violations of the Fourth, Fifth and Fourteenth
5  Amendments based upon the search of Mr. Lojas' premises and the seizure of his deer skulls
6  and log book. The Plaintiffs have agreed to the dismissal of the malicious prosecution claims,
7  leaving only the § 1983 claims for adjudication here.

8  **II.   SUMMARY JUDGMENT STANDARD**

9  Summary judgment is appropriate only if the answers to interrogatories, depositions,
10 admissions, and pleadings combined with the affidavits in support show that no genuine issue
11 as to any material fact remains and the moving party is entitled to a judgment as a matter of
12 law. See Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there is "sufficient
13 evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*
14 *v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations
15 omitted). In application of this summary judgment standard, the Court must view all materials
16 supplied, including all pleadings, in the light most favorable to the non-moving party. *See*
17 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348,
18 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative,
19 summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S.Ct. 2505 (citations
20 omitted).

21 The moving party bears the initial responsibility of informing the court of the basis for
22 its motion and identifying those portions of the record that establish the absence of a genuine
23 issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91
24 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must
25 go beyond the pleadings and come forward with specific facts to demonstrate that there is a
26 genuine issue for trial. See Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

ORDER - 4

1  The non-moving party must do more than show that there is some abstract doubt as to the
2  material facts. It must present significant probative evidence in support of its opposition to
3  the motion for summary judgment in order to defeat the motion for summary judgment.

## III.    DISCUSSION

Defendants ask the court to grant summary judgment in their favor on Plaintiffs § 1983
claims, arguing that they did not violate the Plaintiff's constitutional rights, that they are
entitled to qualified immunity, and that the conduct alleged did not rise to the level of a
constitutional violation.  The Plaintiffs in turn, also ask the court to grant summary judgment
in their favor, arguing that, even taking the facts of this case in a light most favorable to the
Defendants, they are entitled to judgment as a matter of law.

42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected,
any citizen ... to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured...." Section 1983 confers no
substantive rights itself, but rather, "provides remedies for deprivations of rights established
elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d
791 (1985).

When a constitutional violation occurs, law enforcement officers nonetheless are
entitled to qualified immunity if they act reasonably under the circumstances. *Wilson v.
Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The Supreme Court
outlined a two-step qualified immunity analysis in *Saucier*, 533 U.S. at 201-02, 121 S.Ct.
2151. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts
alleged show the officer's conduct violated a constitutional right?" *Id*. at 201, 121 S.Ct. 2151.
If yes, "the next, sequential step is to ask whether the right was clearly established." *Id*. "The
relevant, dispositive inquiry" under this second step is "whether it would be clear to a
reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202,

ORDER - 5

1  121 S.Ct. 2151.  Qualified immunity protects "all but the plainly incompetent or those who

2  knowingly violate the law." *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004)(quoting

3  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

4      There is no dispute that the right to be free from illegal search and seizure was clearly

5  established.

6  **A.    The Search**

7      In determining whether the facts alleged show Ray-Smith's conduct violated a

8  constitutional right, the court must first consider whether Ray-Smith had the right to be

9  present at the Lojas residence and search the residence and outbuildings.  The initial search

10 of the house was being conducted pursuant to two warrants, one federally issued and one state

11 issued, which permitted the search of the property, including the residence and outbuildings

12 for specific drug-related items.    Plaintiffs contend the search was predicated on invalid

13 warrants not supported by probable cause.

14     Plaintiffs challenge the jurisdiction of a Spokane County District Court judge to issue

15 a warrant to be executed outside the county of issuance, *to wit:* in Stevens County.    The

16 boundaries of the county ordinarily define a district court's territorial jurisdiction in criminal

17 matters. RCW 3.66.060. For the issuance of criminal process (such as the issuance of a

18 warrant), the legislature has expanded this jurisdiction to the entire state if the district court

19 has the authority to hear the case. RCW 3.66.100.  Thus, there are circumstances where a

20 judge from one county can issue a search warrant to be executed in another county.  Based

21 upon Plaintiffs summary contentions contained in their brief, it seems that the crimes,

22 individuals, and property under investigation were located in Spokane County and Stevens

23 County.  RCW 3.66.060.  It seems likely in this case that jurisdiction in either county would

24 have been appropriate.   Notably, the heading of the search warrant itself states it was issued

25 for the Superior Court of *Stevens* County, which is where the property was located.  Thus the

26 issue here does not seem to be the fact that the warrant was to be executed in Stevens County,

ORDER - 6

but that is was *signed* by a judge representing she was a *Superior Court* judge when she apparently was not, and whose authority to issue warrants for another county's court is unknown.  As no evidence has been provided on this issue, the court has no basis to question or judge the validity of the state court warrant nor was the Defendant Ray-Smith obligated to investigate the authority of the issuing judge.

Plaintiffs challenge the adequacy of the affidavit in support of the federal search warrant contending there was an inadequate factual basis to lead a reasonable magistrate judge to believe that Lojas was involved in cultivating marijuana.  However, only the warrant itself has been provided to this court. None of the affidavits referenced by the Plaintiffs in their memorandum were furnished.   Plaintiffs have provided no evidence from which the court could even review the validity of the federal warrant.  However, even taking Plaintiffs contentions regarding what was stated in the affidavits as true, the facts set forth would have undisputedly provided the issuing magistrate judge authority to issue the search warrant.  Plaintiffs contend the only alleged facts connecting Lojas to the drug investigation were 1) a phone call between Lojas and an individual being investigated for drug activity; 2) utility bill records showing "marginally higher" usage than his neighbors; 3) an odor of cultivating marijuana coming from the property; and 4) a humming noise coming from an outbuilding common with grow lights ending a cycle of operation indicating the lights turning off.  The Supreme Court has explained that  the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before her, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.  *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).   Although Plaintiffs contend these facts do not show "any glaring indications of a grow operation" (Ct. Rec. 26

at 10), "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity ... innocent behavior frequently will provide the basis for a showing of probable cause." *Id*. at 245, 103 S.Ct. 2317; *see also Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir. 2006) (reviewing a judge's finding of probable cause for the issuance of a search warrant for "clear error"). There is no basis for the court to conclude or even suspect that either warrant in this case was issued without probable cause.

However, even if the search warrants were ultimately found to be invalid, officer Ray-Smith would nevertheless be protected by the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under *Leon*, a police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages. Given the all of the facts here and where officer Ray-Smith herself had no involvement in the preparation of the warrant, there was no reason for Ray-Smith to question the validity of the warrants obtained by the executing officers, particularly after receiving affirmative advice from the Deputy Prosecuting Attorney concerning her lawful authority to enter upon the Lojas property.

Accordingly, because other officers had a warrant to enter and search Lojas's property, officers, including Ray-Smith, were not unlawfully positioned there that evening. Moreover, no one contends it was improper for officers to call upon Ray-Smith to assist with the search and to review the items discovered during the search which officers suspected could have been evidence of state wildlife law violations.

**B.    The Seizure**

Defendants contend state law and the plain view doctrine permitted Ray-Smith's subsequent warrantless seizure of items she believed were evidence of violations of wildlife laws. The court assumes Plaintiffs are correct in their contention that the plain view doctrine would not apply here to justify the warrantless seizure. Police may seize an item in plain

1   view, that is not listed in the warrant, if its incriminating character is immediately apparent

2   without conducting some further search of the object. *Minnesota v. Dickerson*, 508 U.S. 366,

3   375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).  Because the log book and deer heads seized

4   by Ray-Smith were not items immediately recognizable  as clearly incriminating evidence,

5   the plain view doctrine would not apply.

6        However, Officer Ray-Smith stated she seized the items pursuant to a specific state

7   statute.  Specifically, RCW 77.15.070(1) gives fish and wildlife officers the authority to seize

8   property without a warrant:

9        Fish and wildlife officers and ex officio fish and wildlife officers may seize without
         warrant boats, airplanes, vehicles, motorized implements, conveyances, gear,
10       appliances, or other articles they have *probable cause to believe have been held with*
         *intent to violate or used in violation of this title* or rule of the commission or director.
11       However, fish and wildlife officers or ex officio fish and wildlife officers may not seize
         any item or article, other than for evidence, if under the circumstances, it is reasonable
12       to conclude that the violation was inadvertent. The property seized is subject to
         forfeiture to the state under this section regardless of ownership. Property seized may
13       be recovered by its owner by depositing into court a cash bond equal to the value of the
         seized property but not more than twenty-five thousand dollars. Such cash bond is
14       subject to forfeiture in lieu of the property. Forfeiture of property seized under this
         section is a civil forfeiture against property and is intended to be a remedial civil
15       sanction.

16   *See State v. Creegan*, 123 Wash.App. 718, 99 P.3d 897 (Wash.App. Div. 3, 2004).

17        Plaintiffs did not challenge this argument in their written materials, and Defendants,

18   though they argue this statute justifies the seizure, have not analyzed whether Ray-Smith had

19   probable cause. Under the state statute the only question would be whether Ray-Smith had

20   probable cause to believe the items had been held with intent to violate or used in violation

21   of wildlife laws.   Plaintiffs have argued the nature of the items themselves are not

22   incriminating and Ray-Smith has admitted she seized them in order to further investigate

23   whether or not they were evidence of wildlife violations.  The undisputed evidence of record

24   shows that: 1) The entangled set of four antlered deer skulls found by Ray-Smith did not have

25   labels or other identification on them, as did many of the other items Ray-Smith viewed on

26   the property; 2) Two of the four heads had hides still attached to the skull and the other two

ORDER - 9

1  still had decaying brain matter dripping from the brain stem opening; 3) Mr. Lojas made
2  statements at the scene suggesting they were deer he and his *two* daughters had shot and that
3  he didn't know where the tags were; and 4) Mr. Lojas was unable to provide deer transport
4  tags for possession of any of the deer heads.   Ray-Smith stated she believed there were also
5  possible taxidermy (which is why she seized the log book) and "closed season violation of
6  big game" hunting violations.

7        Unless caught in the act of illegally harvesting an animal, for example, it would seem
8  that most fish and wildlife violations frequently would require further investigation by the
9  agency because whether the law has been violated is likely to depend on whether the
10 necessary licenses/permits were obtained and self-reporting requirements met.   Under these
11 circumstances, the evidence available to Ray-Smith provided the required existence of
12 "reasonable grounds for suspicion supported by the circumstances sufficiently strong to rise
13 to the level of probable cause"and warrant seizure of the property pursuant to RCW
14 77.15.070. *Cruz v. Grant County Sheriff's Office*, 74 Wn. App. 490,495; 873 P. 2d 1211,1213
15 (1991) citing *State v. Seagull*, 95 Wn. 2d 898,906; 632 P. 2d 44, 49 (1981).

16 **C.    Qualified Immunity**

17        Plaintiffs have not presented facts establishing that Ms. Ray-Smith's conduct violated
18 Mr. Lojas's constitutional rights.   However, even if the facts could justify the conclusion that
19 the search was improper and the seizure without probable cause, Ray-Smith is entitled to
20 qualified immunity because a reasonable officer could believe that the conduct did not violate
21 Mr. Lojas's constitutional rights.   Ray-Smith acted reasonably in seeking and relying upon
22 the advice of a deputy county prosecutor that it was lawful for her to enter the Lojas property
23 without a warrant of her own because of the existence of the federal and state search warrants.
24 Lojas had no reason to believe this advice was erroneous, nor to question the validity of the
25 judicially secured warrants being executed.   *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir.
26 1990)(reliance on counsel's advice is evidence of good faith); *Forman v. Richmond Police*

ORDER - 10

1  *Dep't*, 104 F.3d 950, 960 (7th Cir. 1997) (police officer's solicitation of advice from county

2  prosecutor in conducting search was evidence of officer's good faith and reasonableness).

3  Likewise, as stated above, even if the search warrants were technically defective, Ray-Smith

4  had no reason to presume or believe them to be invalid and it is undisputed she in good-faith

5  relied upon the warrants and advice of the prosecutor.   Viewing the facts in the light most

6  favorable to Plaintiffs, Ray-Smith's seizure of the property was not unreasonable.  Negligent

7  or innocent mistakes do not violate the Fourth Amendment.  Ray-Smith is entitled to qualified

8  immunity because her actions were objectively reasonable based on the circumstances.

9  **D.    THE ELEVENTH AMENDMENT**

10         States, state agencies, and state officers sued in their official capacities are absolutely

11  immune from damage actions in federal court  pursuant to the Eleventh Amendment, unless

12  the state consents to suit.  *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004)*; Natural*

13  *Resources Defense Council v. California Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996);

14  *Brooks v. Sulphur Springs Valley Elec. Co.*, 951 F.2d 1050, 1053 (9th Cir. 1991); *Taylor v.*

15  *List*, 880 F.2d 1040, 1045 (9th Cir.1989) (concluding that Nevada Department of Prisons was

16  a state agency entitled to Eleventh Amendment immunity); *Mitchell v. Los Angeles*

17  *Community College Dist.*, 861 F.2d 198, 201 (9th Cir.1989).  Because the State Department

18  of Fish and Wildlife is a state agency it is entitled to Eleventh Amendment federal court

19  immunity as is the state of Washington and Ms. Ray-Smith in her official capacity.

20         Moreover, under 42 U.S.C. § 1983, claims can only be brought against people who

21  personally participated in causing the alleged deprivation of a right. *Arnold v. IBM*, 637 F.2d

22  1350, 1355 (9th Cir. 1981).  Neither a state nor its officials acting in their official capacities

23  are "persons" under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109

24  S.Ct. 2304, 105 L.Ed.2d 45 (1989). Additionally, state agencies, such as the Department of

25  Fish and Wildlife, are not "persons" within the meaning of 42 U.S.C. § 1983, and therefore

26  they are not amenable to suit under that statute. *Maldonado v. Harris*, 370 F.3d 945, 951 (9th

1  Cir. 2004), cert. denied, 544 U.S. 968, 125 S.Ct. 1725, 161 L.Ed.2d 615 (S.Ct. 1725 (2005)

2  (*citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)).  Accordingly, Defendants

3  state of Washington,  its agency, and Terry L. Ray-Smith are entitled to judgment as a matter

4  of law with regard to Plaintiffs' § 1983 claims.

5  **E.    Malicious Prosecution**

6      Plaintiff concedes Defendants are entitled to summary judgment on the state law

7  malicious prosecution claim.

8  **IV.    CONCLUSION**

9      Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED**:

10      1.  Defendants' Motion for Summary Judgment (Ct. Rec. 12) is **GRANTED**.

11      2.  Plaintiffs' Motion for Summary Judgment (Ct. Rec. 19) is **DENIED**.

12      The Clerk of the court is directed to enter this Order, enter judgment of dismissal of the

13  Complaint and claims therein with prejudice, provide copies to counsel, and **close** the file.

14      **DATED** this 22nd day of April, 2008.

15                    s/ Justin L. Quackenbush
                    JUSTIN L. QUACKENBUSH
16          SENIOR UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

ORDER - 12